UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAGENEIA P. LaROCHELLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-cv-0115 (TSC) |
| ) | |
| JOSEPH LYNOTT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 24), Defendant's Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 27), and Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 28). For the reasons discussed below, the court GRANTS leave to file a third amended complaint. And because the amended pleading fails to state claims upon which relief can be granted, the court DISMISSES the third amended complaint and this civil action.

**I. PROCEDURAL HISTORY**

Lageneia P. LaRochelle ("Plaintiff"), proceeding *pro se*, filed her original complaint (ECF No. 1, "Compl.") on January 18, 2022, bringing employment discrimination claims under the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, *see* 29 U.S.C. § 701 *et seq.*, and Title VII of the Civil Rights Act ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, against her former employer, MedStar Washington Hospital Center

1

("MWHC"), and four individuals: Joseph Lynott, Edward Palmer, Robbin Hargrove, and Paul Hagens.

Defendants first moved to dismiss (ECF No. 8) on March 23, 2022, and Plaintiff responded on May 6, 2022, with an opposition (ECF No. 10) and a motion for leave to amend the complaint (ECF No. 12). The court denied Plaintiff's motion by minute order on May 9, 2022, because Plaintiff had not conferred with opposing counsel as required under Local Civil Rule 7(m). On May 18, 2022, Plaintiff renewed her motion for leave to amend (ECF No. 14), and Defendants filed their opposition (ECF No. 15) on June 2, 2022.

The court found both the original complaint and first proposed amended complaint (ECF No. 14-1) deficient in five respects. First, Plaintiff purported to raise a disability discrimination claim under Title VII, which only applies to discrimination based on race, color, religion, sex, or national origin, not disability. Second, Plaintiff named four individuals as party Defendants, yet there is no individual liability under the relevant statutes. Third, Plaintiff failed to name her former employer, the only proper defendant to an action under the relevant statutes. Fourth, Plaintiff failed to identify the formal EEO charge of discrimination giving rise to this lawsuit. Fifth, Plaintiff neither identified her alleged disability nor alleged facts supporting her claims under the Rehabilitation Act and the ADA. Notwithstanding these shortcomings, dismissal was not warranted.

On September 26, 2022, the court issued an order (ECF No. 19) denying Defendants' motion to dismiss without prejudice and ordering Plaintiff to file a motion to amend her complaint and a proposed amended complaint drafted in accordance with the court's order, Rules 8, 9 and 10 of the Federal Rules of Civil Procedure, and Local Civil Rule 5.1, setting forth all the claims she intends to bring and the Defendant(s) against whom she brings each claim.

Plaintiff filed a motion to amend (ECF No. 20) on October 26, 2022, and Defendants filed their opposition (ECF No. 22) on November 9, 2022. Before the court ruled on Plaintiff's motion, Plaintiff filed the instant motion (ECF No. 24) on December 21, 2022. The court entered a minute order on December 23, 2022, directing Defendants to respond motion by January 20, 2023. Defendants filed a timely response (ECF No. 27), and Plaintiff filed her reply (ECF No. 28) on February 13, 2023.

## II. PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff's latest submission is, to say the least, confusing. Contrary to Local Civil Rule 15.1, which requires a motion with the proposed amended pleading as an exhibit, Plaintiff submits a single document titled "Plaintiff's Motion for Leave to File Amended Complaint" (ECF No. 24, "3d Am. Compl."). Contrary to Federal Rule of Civil Procedure 10, Plaintiff fails to "state [her] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Plaintiff jumps from topic to topic, referring to events occurring between 2006 and 2022 in no particular order, not by date of occurrence, not by theme and not by legal claim. It is not always clear *when* during this 17-year period certain events occurred, and it certainly is not clear how the events tie together to form distinct legal claims.

Plaintiff attempts to set forth five counts:

> Count One: Violation of the Americans with Disabilities [A]ct of 1990, 42 U.S.C. 12101 et seq
>
> Count Two: Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 701 et seq.
>
> Count Three: Violation of section 60-20.8 (1), (2), & (3) Harassment and hostile work environments

3

>Count Four: Violation of Private Sector Whistleblower Protection Streamlining Act of 2012
>
>Count Five: Violation of Title VII of the Civil Rights Act of 1964

3d Am. Compl. at 2.  The headings are essentially meaningless, and the facts alleged within each section are not confined to, and often appear wholly unrelated to, the topic the count's heading suggests.

That said, the court understands Plaintiff to allege that she is a former Certified Respiratory Therapist at MWHC who requested light or modified duty as an accommodation for her disability, that MWHC refused her accommodation request, that MWHC retaliated against her for having made the accommodation request, and that MWHC wrongfully refused her request for a religious exemption to its Covid-19 vaccination policy.  The third amended complaint also clarifies that MWHC is the sole defendant and dismisses claims against Lynott, Palmer, Hargrove and Hagans.

## III.  DISCUSSION

### A.  Counts Three and Four are Dismissed

Before launching into a discussion of Plaintiff's discrimination and retaliation claims, the court summarily disposes of Counts Three and Four.  Count Three appears to refer to federal regulations, *see generally* 41 C.F.R. Part 60-20, which apply to certain federal government contractors for compliance with Executive Order 11,246 "to ensure non-discrimination on the basis of sex in employment."  41 C.F.R. § 60-20.1; *see* 41 C.F.R. § 60-20.2(a) ("It is unlawful for a contractor to discriminate against any employee or applicant for employment because of sex.").  The complaint makes no factual allegations demonstrating that MWHC is a government contractor to which these regulations apply or supporting plausible claims of harassment or hostile work environment on the basis of sex.  Even if there were such allegations, there is no

private right of action under Executive Order 11,246.  *See Riggs v. Boeing Co.*, No. 98-cv-2091 (JWL), 1999 WL 233285, at *1 (D. Kan. Mar. 4, 1999) (collecting cases).

Count Four appears to refer to legislation introduced in but not passed by the 112th Congress.  *See* H.R. 6409 - 112th Congress (2011-2012): Private Sector Whistleblower Protection Streamlining Act of 2012, H.R.6409, 112th Cong. (2012), https://www.congress.gov/bill/112th-congress/house-bill/6409.  There is no plausible legal clam based on a statute which has not been enacted.

### B. Count Five is Dismissed for Failure to Exhaust Administrative Remedies

Under Title VII and the ADA, before filing suit in federal district court, a plaintiff first must exhaust administrative remedies by filing an EEOC charge.  *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) ("Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it.").  The subsequent lawsuit "is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *Tennant v. District of Columbia*, No. 19-cv-2949 (BAH), 2020 WL 4464505, at *10 (D.D.C. Aug. 3, 2020) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)) (additional citation and internal quotation marks omitted).

Exhaustion of administrative remedies is an affirmative defense, not a jurisdictional requirement, *see, e.g.*, *Ferrell v. Fudge*, No. 21-cv-1412 (CKK), 2023 WL 2043148, at *4 (D.D.C. Feb. 16, 2023), and "[m]otions to dismiss for failure to exhaust administrative remedies are properly addressed as motions to dismiss for failure to state a claim," *Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014) (citation omitted), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).  It is Defendants' burden to prove by a preponderance of evidence that Plaintiff

5

failed to exhaust her administrative remedies prior to filing suit in federal court. *See Gezahey v. Greater Washington Oncology Assocs./Am. Oncology Network*, No. 22-cv-2838 (JMC), 2023 WL 2043077, at *2 (D.D.C. Feb. 16, 2023) (citation omitted); *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.").

Although Plaintiff has yet to identify the EEOC charge(s) at issue, MWHC identifies two candidates: EEOC Nos. 570-2021-00319 and 570-2022-00589.[1]

### 1. 2021 EEOC Charge

EEOC No. 570-2021-00319 ("2021 EEO Charge"), dated May 18, 2021, alleges retaliation and disability discrimination occurring between August 1, 2020, and February 18, 2021. *See* Def. Opp. to Pl. Mot. for Leave to File Third Am. Compl. (ECF No. 27, "Def. Opp"), Ex. 2 (ECF No 27-1) at 5.[2] In the narrative portion, Plaintiff states:

> I am an individual with a disability that Respondent is aware of. Throughout my employment I take FMLA for my disability. For most of my employment *I was led to believe that light duty was not available to me even when I provided medical documents*. It wasn't until recently that I became aware that *light duty is available for others*. Ive [sic] also been subjected to a hostile work environment after management advised staff to talk to those employees who take leave about the shortage of staff and increased work. Since then employees come up to me about taking leave even though its [sic]

---

[1] The court considers Plaintiff's EEOC Charges without converting Defendants' motion to dismiss into one for summary judgment. *See Slate v. Pub. Def. Serv. for the District of Columbia*, 31 F. Supp. 3d 277, 288 (D.D.C. 2014) (considering "EEO complaint filed by the plaintiff and referenced at paragraph 118 in the Complaint" on motion to dismiss); *Ward v. District of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (considering "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss").

[2] Plaintiff completed two charge forms, one signed on March 27, 2021, and the other on May 18, 2021. *See* Def. Opp., Exs. 1-2 (ECF No. 27-1 at 2, 5, respectively). The court follows MWHC's lead, *see* Def. Opp. at 5, in treating the latter as the operative EEOC charge.

6

> attributed to my medical condition. Furthermore, when I do take leave Im [sic] *retaliated against by being assigned to work the floor which is a form of punishment*. Ive [sic] gone to human resources with these concerns and yet its [sic] failed to act.
>
> I believe I have been discriminated against due to my disability and retaliated against for engaging in protected activities in violation of the Americans with Disabilities Act of 1990, as amended.

Def. Opp., Ex. 2 (ECF No. 27-1) at 5 (emphasis added). The EEOC issued its Dismissal and Notice of Rights on October 20, 2021, *id.*, Ex. 5 (ECF No. 27-1) at 17, and the court concludes that Plaintiff has exhausted administrative remedies with respect to the 2021 EEOC Charge.

### 2. 2022 EEOC Charge

EEOC No. 570-2022-00589 ("2022 EEOC Charge"), dated March 2, 2022, alleges retaliation and disability and religious discrimination occurring between August 1, 2021, and November 14, 2021. *See id.*, Ex. 6 (ECF No. 27-1) at 19. Its narrative portion states in relevant part:

> I began working a Respondent in October 2005, as a Respiratory Care Practitioner One. I was terminated on November 14, 2021. On or around August 2021, Respondent finally gave me light-duty as an accommodation for my disability. However, because I did not want to take part in activities that violated healthcare regulations while on light duty, my Director began to harass me and constantly told me that I was not doing enough to justify my light-duty status. Further, on three separate occasions, I was physically assaulted by a co-worker. After the third instance, on or around September 24, 2021, I reported the assault to Respondent. Respondent has refused to provide me with information concerning the assault. Respondent required all of its employees to be fully vaccinated against Covid-19 in order to continue employment. On or around September 8, 2021, I gave my personal physician, a Doctor at Respondent, a medical exemption form I requested that he fill out so that I could provide medical documentation to Respondent exempting me from taking the Covid-19 vaccine. However, after nearly a week of waiting for the documentation, he still had not returned it to me and just hours before the exemption was due, he called me requesting more information about what he should do. I was unable to submit a medical vaccine exemption because of one of Respondents doctors failure to submit the documentation in a timely manner. Because of

7

> this, *I requested a religious exemption to Respondents Covid-19 vaccine mandate. I submitted by exemption letter and my exemption was denied. I submitted a second religious exemption letter, but that too was denied. I was terminated on November 14, 2021.* I believe I have been discriminated against on the basis of my disability, and retaliated against for engaging in protected activity, in violation of The Americans with Disabilities Act of 1990, as amended. *I also believe I have been discriminated against on the basis of my religion (Catholic)*, and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Def. Opp., Ex. 6 (ECF No. 27-1) at 20 (emphasis added).

MWHC represented that the 2022 EEOC Charge remained "pending before the EEOC, and the EEOC ha[d] not issued any Right To Sue notice" when Plaintiff filed her original complaint. Def. Opp. at 13. For these reasons, MWHC argued, "Plaintiff ha[d] not exhausted the required administrative remedies with respect to any religious discrimination claim," and that she could not "pursue any such claim in this case." *Id.* Plaintiff did not respond to this argument in her reply, *see generally* Pl. Resp. to Def. Opp. to Pl. Mot. for Leave to File Third Am. Compl. (ECF No. 28, "Pl. Reply"), and the court deems the argument conceded, *see Ali v. District of Columbia Court Servs. and Offender Supervision Agency*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) ("If a plaintiff fails to respond to a motion to dismiss or files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded"); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004).

The court concludes that Plaintiff failed to exhaust administrative remedies with respect to the 2022 EEOC Charge. Consequently, the court DISMISSES Count Five, the Title VII claim

regarding Plaintiff's request for a religious exemption from MWHC's Covid-19 vaccine policy.[3]

### C. Counts One and Two Fail to State Claims for which Relief can be Granted

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . the . . . advancement[ ] or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Similarly, under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her . . . disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794(a). Plaintiff alleges MWHC violated these statutes by failing to accommodate her disability and by retaliating against her for having engaged in protected activity pertaining to her disability.

#### 1. Limitations Periods

Given that events described in the Third Amended Complaint occurred over roughly 14 years, the court first addresses the time limits within which an actionable claim must have arisen.

#### a. 300-day Limitations Period for ADA Claims

The ADA adopts certain "powers, remedies, and procedures" set forth in Title VII, 42 U.S.C. § 12117(a), including 42 U.S.C. § 2000e-5, which requires that a claimant file a charge of discrimination "within three hundred days after the alleged unlawful employment practice occurred[.]" 42 U.S.C. § 2000e-5(e)(1). Thus, the only acts for which Plaintiff might recover

---

[3] Notwithstanding mention of the ADA in the 2022 EEOC Charge, the court discerns no actionable disability discrimination claim. Plaintiff states that MWHC granted her request for a light duty assignment in or about August 2021 as an accommodation of her disability, and the alleged assault by a co-worker does not appear related to Plaintiff's disability.

9

under the ADA are those occurring on or after July 22, 2020.  *See Charles v. District of Columbia*, 164 F. Supp. 3d 98, 101 (D.D.C. 2016), *aff'd sub nom. Charles v. District of Columbia Dep't of Youth Rehab. Servs.*, 690 F. App'x 14 (D.C. Cir. 2017).

### b. Three-Year Limitations Period for Rehabilitation Act Claims

"Because the Rehabilitation Act does not specify its own limitations period, courts generally 'borrow' one from an analogous state cause of action, provided that the state limitations period is not inconsistent with underlying federal policies."  *Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 551 (D.C. Cir. 2016) (per curiam) (quoting *Spiegler v. District of Columbia*, 866 F.2d 461, 463-64 (D.C. Cir. 1989)).  While the limitations period previously was thought to be one year, *see Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 82 (D.D.C. 2021) (citing *Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012)) (applying one-year D.C. Human Rights Act limitations period to determine timeliness of Rehabilitation Act claim), the D.C. Circuit since has held that the three-year residual statute of limitations under District of Columbia law applies, *Stafford v. George Washington Univ.*, 56 F.4th 50, 55 (D.C. Cir. 2022); *see Thomas v. District of Columbia*, No. 22-cv-1269 (TJK), 2023 WL 2610512, at *4 (D.D.C. Mar. 23, 2023) (pursuant to *Stafford*, applying three-year statute of limitations to Rehabilitation Act claim).  Thus, Plaintiff may pursue Rehabilitation Act claims accruing as far back as January 18, 2019.  And because "it is generally understood that Section 504 claims brought by non-federal employees . . . are exempt from the administrative exhaustion requirements that govern claims brought by federal employees under the Rehabilitation Act," *Pappas*, 513 F. Supp. 3d at 83; *see Betts v. Washington Metro. Area Transit Auth.*, No. 21-cv-1861 (CKK), 2022 WL 3226281, at *15 (D.D.C. Aug. 10, 2022); *Congress v. District of Columbia*, 277 F. Supp. 3d 82, 87 (D.D.C. 2017), Plaintiff need not have exhausted a

10

Rehabilitation Act claim prior to filing this lawsuit.

### 2. Failure to Accommodate Claim

An employer can discriminate by "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A); *see Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A) (ADA provision) and 29 U.S.C. § 794(d) (Rehabilitation Act provision incorporating ADA standards)). A viable claim requires factual allegations that the employee was disabled; the employer had notice of her disability; the employee was able to perform essential functions of her position with or without reasonable accommodation; and the employer denied her request for reasonable accommodation. *See Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014); *Menoken v. Burrows*, No. 16-cv-2480 (DLF), 2023 WL 1470014, at *2 (D.D.C. Feb. 2, 2023) (Rehabilitation Act); *Hester v. Paul Pub. Charter Sch.*, No. 21-cv-3166 (JEB), 2023 WL 355913, at *4 (D.D.C. Jan. 23, 2023) (ADA).

### a. Plaintiff Adequately Alleges "Disability"

For purposes of the ADA and the Rehabilitation Act, the term "disability" means:

> (A) a physical or mental impairment that substantially limits one or more major life activities . . . ;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment[.]

42 U.S.C. § 12102(1). "A person is disabled . . . if: (1) [she] suffers from an impairment; (2) the impairment limits an activity that constitutes a major life activity . . . ; and (3) the limitation is substantial." *Haynes v. Williams*, 392 F.3d 478, 481–82 (D.C. Cir. 2004) (citations omitted).

"Major life activities" include "performing manual tasks, . . . walking, standing, lifting, bending, . . . and working."  42 U.S.C. § 12102(2)(A).

### *i*.  Plaintiff's Physical Impairments

Plaintiff's purported impairments are many.  Her original complaint lists several medical conditions, *see* Compl. ¶ 12 ("severe congenital cervical spinal stenosis, lumbar spondylitis, degenerative disc disease, and osteoarthritis"), and her Third Amended Complaint mentions fibromyalgia, *see* 3d Am. Compl. at 8, post-traumatic stress disorder, *see id.* at 11, and "chronic back pain," *id.* at 13.  It is not at all clear which of Plaintiff's impairments, or combination of impairments, amounts to a disability.  Similarly, Plaintiff mentions having sustained work-related injuries including a back injury in 2007, *see id*. at 3, and two injuries in 2021, *see id*. at 5, 12.  Again, the Third Amended Complaint alleges no facts to show any of these injuries constitutes a disability.

That said, Plaintiff's allegation that she is unable to bend, pick up objects from the floor, reach over her head, stand for long periods, put on and tie her shoes, lift more than 25 pounds or twist, *see id*. at 3, implies that an impairment or combination of impairments substantially limits her major life activities.  At the motion to dismiss stage, Plaintiff's meager allegations suffice.

### *ii*.  Reaction to N95 Masks

While Plaintiff's myriad impairments may constitute a disability, the underlying condition causing a dermatological reaction to N95 masks is not a proper basis for a disability claim.  Plaintiff alleges that, in September 2020, MWHC issued "reused and sterilized N95 mask[s]" which caused her "lip . . . to burn and swell up."  3d Am. Compl. at 4.  After a trip to the emergency room, Plaintiff alleges, it was recommended that, "[d]ue to dermatological response to N95 mask (used mask), Plaintiff "use[] new masks not previously used by others

then sterilized." *Id*.  Although MWHC initially may have "denied [Plaintiff] accommodation for [the] lip break out (unused N95's) due to reused then sterilized N95's supplied by Medstar," *id*. at 5, Plaintiff alleges that she began to receive unused N95 masks in November 2020, *see id*.

"A claimant must . . . demonstrate that the impairment *substantially* limits *a major life activity* . . . , and is permanent or long-term." *Lester v. Natsios*, 290 F. Supp. 2d 11, 24 (D.D.C. 2003) (citations omitted) (emphasis in original).  The Third Amended Complaint alleges no facts showing that Plaintiff had a disability for which new N95 masks would be a reasonable accommodation, or that a condition triggering a dermatological reaction to used N95 masks amounts to an impairment substantially limiting a major life activity, or that any such impairment was permanent or long-term.  *See Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 36–37 (D.D.C. 2011).  Therefore, any disability claim arising from N95 masks must fail.

### b. Plaintiff Adequately Alleges She is a "Qualified Individual"

Plaintiff is not entitled to relief merely because she may have a disability.  Rather, she must allege facts to show she is a "qualified individual," *see* 42 U.S.C. § 12112(a); 29 U.S.C. § 794(a), defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8).

"'[T]he essential duties of [an employee's] position are a question of fact' which are not required to be 'alleged with particularity.'" *Floyd v. Lee*, 968 F. Supp. 2d 308, 327 (D.D.C. 2013); *see Pappas*, 513 F. Supp. 3d at 94 (quoting *Kirkland v. McAleenan*, No. 13-cv-0194 (RC), 2019 WL 7067046, at *8 (D.D.C. Dec. 23, 2019)) (observing that "[a] determination that a plaintiff is not a 'qualified individual' is rare on a motion dismiss" as "determining a job's

13

'essential functions' is typically a factual issue to be determined by a jury") (additional citation omitted). Although Plaintiff offers only a broad position description, *see* 3d Am. Compl. at 1-2, it is enough that she alleges she "was able to work with or without accommodations," *id*. at 3, and this supports an inference that Plaintiff could perform the essential functions of the Certified Respiratory Therapist position at all relevant times.[4]

### c. Plaintiff Fails to Allege MWHC Had Notice of her Disability

Here, the rambling and disorganized nature of the Third Amended Complaint works against Plaintiff in two key respects. First, Plaintiff fails to allege sufficient facts tending to show that MWHC had notice of her disability. At most, Plaintiff alleges she "complained to the night shift supervisors . . . about [her] physical issues and how the assignments [she] was given made [her] hurt even worse," 3d Am. Compl. at 6. Plaintiff does not identify whom she notified, how she notified them, or what she told them. A complaint about "physical issues" or a general complaint about pain does not allege plausibly that MWHC would have been on notice of a disability affecting whether and how Plaintiff could perform her duties.

Plaintiff cannot rely on her requests for leave under the Family Medical Leave Act ("FMLA"), *see* 29 U.S.C. § 2601 *et seq*., as a substitute for notice to MWHC for purposes of the ADA. *See Murphy v. District of Columbia*, No. 18-cv-1478 (JDB), 2022 WL 2643554, at *2 (D.D.C. July 8, 2022) ("Given the statutory differences between the FMLA and the ADA, an application for medical leave under the FMLA does not automatically constitute a request for a

---

[4] By now, though, Plaintiff is "no longer physically able to do [her] former job, with or without accommodations," 3d Am. Compl. at 3, and, presumably, has ceased to be a "qualified individual." *See Badwal v. Bd. of Trustees of Univ. of District of Columbia*, 139 F. Supp. 3d 295, 310 (D.D.C. 2015); *Baron v. Dulinski*, 928 F. Supp. 2d 38, 42 (D.D.C. 2013) (granting defendants' motion to dismiss plaintiff's disability discrimination claim where plaintiff was "totally disabled" and incapable of performing the essential functions of her job).

14

reasonable accommodation under the ADA."); *see also Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020) ("The scope of entitlements under the ADA includes a range of reasonable accommodations while the FMLA authorizes only leave."). By invoking FMLA, Plaintiff was asking *not* to work for some period of time. Even if Plaintiff sought FMLA for a medical reason, for example, "exacerbation of pain," 3d Am. Compl. at 6, her request "does not equal a request for a reasonable accommodation," *Badwal v. Bd. of Trustees of Univ. of District of Columbia*, 139 F. Supp. 3d 295, 314 (D.D.C. 2015) (citing *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 23 (D.D.C. 2002)) (finding a request for leave without pay does not equal a request for a reasonable accommodation). While "there may well be cases where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff requested it," *Chenari v. George Washington Univ.*, 847 F.3d 740, 748 (D.C. Cir. 2017), Plaintiff has not alleged facts demonstrating that her need for accommodation was so obvious.

Second, the Third Amended Complaint does not describe an actual accommodation request. "An employee's request for an accommodation does not need to be in writing or use the specific phrase 'reasonable accommodation,' but the request must make sufficiently clear that the employee 'wants assistance with . . . her disability so that . . . she may return, or continue, to work.'" *Pappas*, 513 F. Supp. 3d at 87 (quoting *Badwal*, 139 F. Supp. 3d at 313) (additional citation omitted). Notwithstanding her mention of light duty, *see* 3d Am. Compl. at 7, schedule modifications, *see id.*, and modified duty, *see id.* at 13, in conclusory fashion, Plaintiff makes no allegations identifying or describing a particular accommodation request, or explaining how a requested accommodation would have assisted her in returning to or continuing to work at MWHC as a Certified Respiratory Therapist.

15

Nor is it clear *when* Plaintiff made her requests. Her amended complaint indicates that, at most, during the relevant time period, MWHC on unspecified dates allegedly *denied* accommodation requests. *See* 3d Am. Compl. at 5, 13-14. The alleged denials are not connected to particular requests, however. The only apparent request identified by date occurred in September 2021, months *after* the 2021 EEOC Charge, and because that request was granted, *see* 3d Am. Compl. at 6, it is not a valid basis for a discrimination claim.

With a failure to accommodate claim, "there is an underlying assumption . . . that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Murphy*, 2022 WL 2643554, at *2 (quoting *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)) (internal quotation marks and brackets omitted). Plaintiff does not allege plausibly that she actually requested an accommodation, when she made her requests, when MWHC denied her requests, or MWHC's proffered reasons for denying them.

### 4. Retaliation Claim

The ADA and the Rehabilitation Act make it unlawful to retaliate against an employee "on account of . . . her having exercised or enjoyed . . . any right granted or protected by" these statutes. *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 170 (D.D.C. 2018) (citing 42 U.S.C. § 12203 (ADA) and 29 U.S.C. § 791(f) (incorporating ADA standard in 42 U.S.C. § 12203)). A prima facie retaliation claim must allege that the employee engaged in protected activity, she suffered an adverse employment action, and there exists a causal link between the two. *See Congress*, 324 F. Supp. 3d at 170 (citing *Solomon*, 763 F.3d at 14); *see also Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (applying framework for Title VII cases to ADA retaliation cases under § 12203). For these purposes, an adverse employment action "is one that 'could well dissuade a reasonable [person] from making or supporting a

16

charge of discrimination.'" *Brown v. Trinity Washington Univ.*, No. 22-cv-1612 (JDB), 2023 WL 2571729, at *5 (D.D.C. Mar. 20, 2023) (quoting *Porter v. Shah*, 606 F.3d 809, 817–18 (D.C. Cir. 2010)).

It is nearly impossible to identify Plaintiff's protected activity. Insofar as "the act of requesting in good faith a reasonable accommodation is a protected activity under 42 U.S.C. § 12203, which is incorporated into the Rehabilitation Act[,]" *Solomon*, 763 F.3d at 15, perhaps Plaintiff's emails to Hargrove on November 4, 2020, *see* 3d Am. Compl. at 7, 13-14 ("I was being denied modified duty (accommodations) for my chronic back pain while other day shift therapists were given accommodations"), and November 18, 2020, *see id*. at 8, 14 (referencing "incomplete NLRB charge for harassment and retaliation for engaging in protected activity"), can be interpreted as good faith accommodation requests. But even if these communications were considered protected activity, Plaintiff fails to allege facts linking this activity to an adverse employment action of any sort. Nor can Plaintiff take the position that denial of a request for reasonable accommodation is itself a basis for a retaliation claim. *See Sandler v. Blinken*, No. 21-cv-2226 (DLF), 2022 WL 4547557, at *9 (D.D.C. Sept. 29, 2022) (citing *Harris v. Chao*, 257 F. Supp. 3d 67, 89 n.28 (D.D.C. 2017)) (concluding that, absent "some 'distinct retaliatory act' besides denial of [plaintiff's] requests for accommodation, she cannot bootstrap herself into a retaliation claim by claiming that denial of her requests for accommodations as itself an act of retaliation").

Furthermore, the only adverse action Plaintiff allegedly suffered was assignment to general or intermediate medical care floors after having taken FMLA leave, *see* 3d Am. Compl. at 6; 2021 EEOC Charge (having "take[n] FMLA for [her] disability," Plaintiff allegedly was "retaliated against by being assigned to work the floor which is a form of punishment"), which

17

she allegedly had done between 2008 and 2021, *see* 3d Am. Compl. at 4.  There is no FMLA claim in this lawsuit, however.  Although there is such a thing as a FMLA retaliation claim, *see Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1367–68 (D.C. Cir. 2000)), Plaintiff has not raised it, and it is not the court's job to hunt for claims a litigant fails to present on her own.

"Courts in this Circuit 'have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss[.]'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)).  That said, a plaintiff still must allege sufficient facts to make her claim plausible.  *See Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) ("While a plaintiff need not plead a *prima facie* case at this stage, he must nonetheless allege facts that if accepted as true would make his discrimination claims plausible.").  Plaintiff has not and, accordingly, the court DISMISSES the Third Amended Complaint.  An Order is issued separately.

Date:  September 25, 2023         /s/
                                  TANYA S. CHUTKAN
                                   United States District Judge